IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:16-CV-139-FL

| | |
|---|---|
| ROSETTA COOPER WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Rosetta Cooper Williams ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that she is not disabled.[2] The case is before the court on the parties' motions for judgment on the pleadings. D.E. 16, 20. Both filed memoranda in support of their respective motions. D.E. 17, 21. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 3 Nov. 2016 Text Ord. For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] Nancy A. Berryhill has succeeded the former defendant, Carolyn W. Colvin, as the Acting Commissioner of Social Security and has been substituted for her as the defendant in this case pursuant to Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[2] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

I. **BACKGROUND**

A. **Case History**

Plaintiff filed applications for DIB and SSI on 29 January 2013, alleging a disability onset date of 28 January 2013 in both. Transcript of Proceedings ("Tr.") 13. The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 13. On 24 October 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by counsel, and a vocational expert testified. Tr. 27-53. The ALJ issued a decision denying plaintiff's claims on 19 December 2014. Tr. 13-21. Plaintiff timely requested review by the Appeals Council. Tr. 8-9. On 9 December 2015, the Appeals Council admitted additional evidence submitted by plaintiff (Tr. 2, 6, 493-505), but denied the request for review (Tr. 1).

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 31 March 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 5); Compl. (D.E. 6).

B. **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.
>
> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[4]

---

[3] *See also* 20 C.F.R. § 404.1545(a)(1).

[4] *See also* 20 C.F.R. § 404.1545(a)(2).

3

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C. ALJ's Findings

According to plaintiff's testimony, she was 51 years old on the alleged onset date of disability and 53 years old on the date of the hearing. *See* Tr. 31. She also testified that she completed high school and obtained a nursing degree from a community college. Tr. 31. The ALJ found that plaintiff has past relevant work as a nurse assistant, rubber goods finisher, plastic products finisher, and hand packager. Tr. 20 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 15 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: disorder of the spine, diabetes mellitus, and hypertension. Tr. 15 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 15-16 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform medium work, as defined in the Regulations, subject to various limitations. Tr. 16 ¶ 5. Under the Regulations, medium

---

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

4

work is work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). Medium work and the other terms for exertional level as used in the Regulations have the same meaning as in the *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"). *See* 20 C.F.R. §§ 404.1567, 416.967. The DOT defines medium work (*i.e.*, "M-Medium Work") as "[e]xerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects." DOT, app. C § IV, def. of "M-Medium Work," 1991 WL 688702.

The limitations included by the ALJ in the RFC were as follows:

> [T]he undersigned finds that the claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can occasionally climb ladders, ropes and scaffolds. She can occasionally stoop and crouch. The claimant must avoid concentrated exposure to hazards such as working around unprotected heights and around dangerous machinery.

Tr. 16 ¶ 5.

Based on his determination of plaintiff's RFC and relying on the testimony of the vocational expert, the ALJ found at step four that plaintiff was able to perform her past relevant work as a nurse assistant, rubber good finisher, finisher, and hand packager as normally performed.[6] Tr. 20 ¶ 6. The ALJ did not formally make a finding at step five, although he cited the vocational expert's testimony that if plaintiff were limited to light work, there would be jobs in significant numbers in the economy she could perform. Tr. 20 ¶ 6 (referring to Tr. 50-51). The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 28 January 2013, through the date of the decision, 19 December 2014. Tr. 20 ¶ 7.

---

[6] At one point, the ALJ erroneously states that the vocational expert testified that plaintiff could perform the duties of a carpenter. Tr. 20 ¶ 6. In the same section of his decision, the ALJ properly identifies the past relevant work the vocational expert testified plaintiff had performed. Tr. 20 ¶ 6. It is therefore apparent that the ALJ's reference to plaintiff's working as a carpenter was inadvertent.

5

## II. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1

(W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and benefits awarded, or that this case should be remanded for a new hearing on the grounds that the ALJ erred in assessing plaintiff's credibility and determining her RFC. The court will address each contention in turn.

### IV. ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

#### A. Applicable Legal Principles

The ALJ's assessment of a claimant's credibility involves a two-step process. First, the ALJ must determine whether the claimant's medically documented impairments could cause the claimant's alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate the claimant's statements concerning those symptoms. *Id.* The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'"

*Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)).[7]

In assessing a claimant's credibility, the ALJ must consider "all of the available evidence." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The evidence that should be considered includes: the claimant's history; signs and laboratory findings; statements from the claimant, the claimant's treating and nontreating sources about how the claimant's symptoms affect the claimant, including medical opinions; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; any measures the claimant uses or has used to relieve his pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3).

"A party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id.* (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595.

---

[7] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case, issued 19 December 2014.

B.  **Analysis**

Plaintiff testified to the effect that she has disabling chronic low back and left leg pain. *See* Tr. 31-47. After summarizing plaintiff's testimony (Tr. 16-17 ¶ 5) and reviewing the medical evidence (Tr. 17-19 ¶ 5), the ALJ determined at the first step of the credibility analysis that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 19 ¶ 5). However, at the second step the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 19 ¶ 5.

Among the reasons cited by the ALJ are the following:

> In terms of the claimant's alleged symptoms of back pain, diabetes and hypertension, she had testified that she lived alone. Although she complained of back pain since her injury, in February 2013 she was not interested in undergoing back surgery, but complained of buckling in her knees. The records showed that she only took Tylenol for pain relief. She alleged that activities and movement aggravated her pain, but she disclosed that she was able to soak in hot water to relax . . . [,] grocery shop, drive and perform some household chores. [Treating orthopedist David C. Miller, M.D.] had noted in November 2013 that the claimant had admitted that she was able to care for herself. He had stated that no assistive device was needed and her gait and posture was normal as well.
>
> The claimant does not have any significant anatomical structural deformities and there is no evidence of ongoing nerve root compression, which might he expected based on the degree of pain alleged. The treatment regimen indicates that the claimant's symptoms are not as intractable as alleged. In addition, the medical evidence do[es] not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process.

Tr. 19 ¶ 5.

The ALJ also noted that a 21 March 2013 functional capacity evaluation ("FCE") of plaintiff (Tr. 412-22, 23-33 (duplicate copy)) determined that she could perform work in the

9

"Medium range."[8] Tr. 18 ¶ 5. This level of work is defined in the FCE the same as medium work (*i.e.*, "M-Medium Work") in the DOT: "Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects." Tr. 412; *see* DOT, app. C § IV, def. of "M-Medium Work," 1991 WL 688702 (set out on p. 5 above). The ALJ acknowledged that the definition of medium work in the FCE is the same as that in the DOT: "The testing indicated she was safely capable of performing medium work as defined by the [DOT]." Tr. 18 ¶ 5. As noted previously, this definition has the same meaning as that for medium work in the Regulations. *See* 20 C.F.R. §§ 404.1567, 416.967.

The specific FCE administered was the ErgoScience Physical Work Performance Evaluation, which it itself states "is substantiated by reliability and validity research conducted at the University of Alabama at Birmingham and reported in the *Journal of Occupational Medicine*, September 1994." Tr. 412. The evaluator was a doctor of physical therapy with various professional certifications, Kelly A. Senglar, PT, DPT, COMT, Cert. MDT, CMP. Tr. 416.

In addition, the ALJ pointed out that the 30 May 2013 assessment by the nonexamining state agency consulting physician, Perry Caviness, M.D. (Tr. 80-82 (DIB), 91-93 (SSI)), also found plaintiff capable of medium work. Tr. 19 ¶ 5. The ALJ gave great weight to Dr. Caviness's opinion as consistent with the longitudinal medical record, including specifically "formal testing in the record," an obvious reference to the FCE. Tr. 19 ¶ 5.

Plaintiff argues summarily that the ALJ's credibility determination is not supported by substantial evidence, while her allegations of disabling pain are. Clearly, however, the evidence

---

[8] The two copies of the FCE are in Exhibit 7F at exhibit pp. 5-15 and 6-26. As plaintiff's counsel pointed out and the ALJ concurred at the hearing, the subsequent portions of Exhibit 7F—pp. 27-49 or Tr. 434-56—relate to a person other than plaintiff and were erroneously included in the record in this case. Tr. 29-30.

cited by the ALJ does constitute substantial evidence supporting his credibility determination. The matters addressed by such evidence are proper factors in evaluating a claimant's credibility. The court accordingly rejects plaintiff's challenge to the ALJ's credibility determination.

## V. ALJ'S RFC DETERMINATION

### A. Applicable Legal Principles

In determining a claimant's RFC, Social Security Ruling 96-8p, 1996 WL 374184 (2 July 1996) requires the ALJ to perform a function-by-function analysis. The ruling states that the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." *Id.*, 1996 WL 374184, at *1. However, the Fourth Circuit has declined to adopt a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis. *Mascio*, 780 F.3d at 636. Rather, "'remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly conducted analysis by a state agency consultant. *See, e.g., Linares*, 2015 WL 4389533, at *3 ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with SSR 96–8p." (citing *Lemken v. Astrue*, No. 5:07–CV–33–RLV–DCK, 2010 WL 5057130, at *8 (W.D.N.C. 26 July 2010))).

### B. Analysis

Plaintiff argues that the ALJ erred by not performing a proper function-by-function analysis. While acknowledging the 21 March 2013 FCE determining that plaintiff could perform medium work, plaintiff argues that it provided only a snapshot of plaintiff's capacity on the day

11

of the evaluation, not her capacity to work on a regular and continuing basis, that is, eight hours a day for five days a week or on an equivalent schedule. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996). She further argues that the FCE was the only evidence the ALJ pointed to to support his determination that plaintiff could lift 50 pounds. Plaintiff's contentions are baseless.

The FCE itself indicates that it was not limited to determining plaintiff's capacity solely on the date of the evaluation. Rather, it states expressly: "Tolerance for the 8-Hour Day: Based on the individual task scores in Dynamic Strength, Position Tolerance and Mobility, the client is able to tolerate the Medium level of work for the 8-hour day/40-hour work week." Tr. 412. Notably, the FCE evaluated a broad range of work-related physical functions encompassing those the *Mascio* court held an ALJ needs to analyze. *See Mascio*, 780 F.3d at 636 n. 5 (citing Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *1 ¶ 4); Tr. 415, 421-22.

Further, the ALJ did not rely solely on the FCE for his determination that plaintiff could lift 50 pounds. As previously noted, he also relies on the opinion of Dr. Caviness. In addition, he cites to Dr. Miller's 28 March 2013 opinion that "plaintiff was to be placed on a medium duty work restriction permanently per her [FCE]." Tr. 18 ¶ 5 (referencing Tr. 404).

It is true that Dr. Miller, along with another orthopedist at the same practice, Edgar A. Fike, IV, M.D., had previously found plaintiff limited to light work. *See* Tr. 390, 406. But the ALJ explained the change in Dr. Miller's opinion after the FCE was performed and that he accorded the prior opinions that plaintiff was limited to light work less weight as a result of the FCE:

> The claimant was treated at Carolina Regional Orthopaedics. [Dr. Fike] noted on January 8, 2013 that the claimant was seen for low back pain. Dr. Fike stated that the claimant was restricted to lifting no more than 25 pounds. [Dr. Miller] noted on February 14, 2013 that the claimant does not appear interested in surgery for

12

her chronic low back pain. He stated that the claimant only took Tylenol for pain relief. *Dr. Miller recommended that the claimant remain on a 25 pound weight lifting restrictions until a functional capacity evaluation was completed to determiner her ability . . . to work.*

*Dr. Miller stated on March 28, 2013 that the claimant was to be placed on a medium duty work restriction permanently per her functional capacity evaluation.* She was given a PPI rating at two percent of the spine. This physician stated that the claimant would be discharged from his care. He noted that the claimant's physical examination was unchanged. Her strength was five out of five. *In early 2013 the claimant underwent formal testing to evaluate her [RFC]. The testing indicated she was safely capable of performing medium work as defined by the Dictionary of Occupational Titles.*

On November 15, 2013, she complained of lower back and lumbar spine problems. Dr. Miller stated that the claimant acknowledged that she was able to care for herself and that she occasionally exercised as well. The claimant had a blood pressure reading of 147/90 and she weighed 198 pounds. On physical examination, this physician stated that the claimant had a normal gait and posture with no assistive devices. She also had a full range of motion of her lumbar spine with mild pain. The claimant's strength was five out of five (Exhibits 5F, 6F and 8F). *The opinions of Drs. Fike and Miller with regard to the claimant's lifting no more than 25 pounds, is given some weight, but must be considered in light of formal testing indicating the capability of performing medium work.*

Tr. 18 ¶ 5 (emphasis added).

As previously noted, the ALJ also considered plaintiff's reports that she could grocery shop, drive, and perform some household chores. Tr. 19 ¶ 5.

The court concludes that the ALJ performed an adequate function-by-function analysis, which included reliance on the FCE and opinions of Dr. Miller and Dr. Caviness that plaintiff could perform medium work. The ALJ's RFC determination is otherwise supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to the ALJ's RFC determination.

## VI. CONCLUSION

For the foregoing reasons, based on its consideration of the record as supplemented by the additional evidence admitted by the Appeals Council, the court concludes that the

Commissioner's decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 20) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 16) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 3 May 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 19th day of April 2017.

_____
James E. Gates
United States Magistrate Judge